UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELODY BOWE,

           Plaintiff,

           v.                              **DECISION AND ORDER**
                                                            17-CV-622S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

_____

1. Plaintiff Melody Bowe brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2. On December 6, 2012, Plaintiff protectively filed an application for DIB with the Social Security Administration ("SSA"). (R.[1] at 185-86). Plaintiff alleged disability since September 1, 2012, due to chronic obstructive pulmonary disease ("COPD"), emphysema, asthma, fibromyalgia, glaucoma, and migraines. (R. at 207). Plaintiff's application was denied (R. at 56, 57-66), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 89-90).

3. On October 17, 2013, ALJ Mark Hecht held a hearing at which Plaintiff—without representation—appeared and testified. (R. at 46-55). At the time of the hearing, Plaintiff was 49 years old (R. at 56, 185), with at least a 10th grade education (R. at 50), and past work experience as cleaner, bench assembler, and production helper. (R. at 42-44).

---

[1] Citations to the underlying administrative record are designated as "R."

1

4. ALJ Hecht considered the case *de novo* and, on November 22, 2013, issued a written decision denying Plaintiff's application for benefits. (R. at 57-66). On April 7, 2015, the Appeals Council vacated this decision and remanded Plaintiff's application for further review and consideration of new evidence. (R. at 69-72).

5. At a new hearing on September 10, 2015, Plaintiff—assisted by counsel—and vocational expert ("VE") Christine DiTrinco appeared and testified before ALJ Timothy McGuan. (R. at 31-45). ALJ McGuan considered the case *de novo* and issued a decision on January 15, 2016, finding that Plaintiff was not disabled. (R. at 7-16). The Appeals Council denied Plaintiff's request to review ALJ McGuan's decision on May 18, 2017. (R. at 1-4).

6. Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on July 7, 2017. (Docket No. 1). Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (Docket Nos. 16, 21), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, both Plaintiff's and Defendant's motions for judgment on the pleadings are denied.

7. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the function of a reviewing court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quotations marks omitted). The Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.

---

[2] ALJ McGuan's January 15, 2016 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

8. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

9. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled within the meaning of the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12. ALJ McGuan analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ[3] found that Plaintiff has not engaged in substantial gainful activity since September 1, 2012, the alleged onset date. (R. at 12). At step two,

---
[3] All herein references to "the ALJ" without specific attribution shall refer only to ALJ McGuan, whose decision dated January 15, 2016 is the subject of the instant appeal.

4

the ALJ found that Plaintiff had several severe impairments: asthma, COPD, emphysema, foraminal stenosis in C4-C6 with spinal stenosis and disk bulges, C6 radiculopathy, and status post anterior cervical discectomy. Id. At step three, the ALJ found that Plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12-13).

13. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with occasional exposure to respiratory irritants. (R. at 13-16). At step four, the ALJ found Plaintiff to be capable of performing her past relevant work as a bench assembler. (R. at 16). Accordingly, the ALJ determined that Plaintiff is not disabled. Id.

14. Plaintiff contends that reversal or remand is warranted because: (1) Plaintiff's COPD meets or medically equals an impairment listing that the ALJ did not address; (2) the ALJ failed to follow the order of the Appeals Council upon remand with respect to further consideration or development of Plaintiff's alleged fibromyalgia and other alleged physical symptoms and limitations; and (3) the ALJ exhibited bias and pre-judged Plaintiff's application unfavorably. (Docket No. 16 at 3-5). Each of these arguments is addressed in turn.

15. Plaintiff first argues that the Commissioner's decision should be reversed and remanded solely for calculation of benefits due, because Plaintiff's COPD meets or medically equals Listing 3.02(C)(1) for chronic respiratory disorders. (Docket No. 16 at 3-4). To support this contention, Plaintiff claims that a July 24, 2014 pulmonary function test ("PFT") "explicitly showed <u>two</u> DLCO[4] results of 6.01ml/min/mmhg [sic], well below the Listing level." (Docket No. 16 at 3-4) (emphasis added).

---

[4] "DLCO means diffusing capacity of the lungs for carbon monoxide" and "[a] DLCO test measures the gas exchange across cell membranes in [the] lungs. It measures how well CO diffuses from the alveoli (air sacs) of [the] lungs into [the] blood." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 3.00(C (9), (F)(1).

5

16. If this statement were true (and the test results were obtained under proper testing conditions), Plaintiff's argument might have some merit. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 3.00(F) (detailing SSA's requirements for an acceptable DCLO test and report). The SSA will find a claimant disabled due to chronic impairment of gas exchange when the "[a]verage of two unadjusted, single-breath DLCO measurements [is] less than or equal to the value in Table III for [the claimant's] gender and height without shoes." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02(C)(1). According to Table III, Plaintiff, a female with a height of 63 inches (R. at 364), would meet the requirements of the Listing if she could present evidence that the average of two acceptable DLCO measurements is less than or equal to 9.0. See Id.

17. Plaintiff has not met this burden. Contrary to Plaintiff's claim that "[t]he pulmonary function test performed by Dr. Arnal in July 2014 explicitly showed two DLCO results of 6.01ml/min/mmhg [sic]," the PFT report lists only one unadjusted DLCO measurement, rather than the mandated average of two acceptable measurements. (R. at 364). An ALJ "will only consider single breath DLCO test results that comply with the requirements listed in Listing 3.00(F)(1) of Appendix 1." Brown v. Colvin, 2015 U.S. Dist. LEXIS 107395, *49, 2015 WL 4878480 (E.D.N.Y. Aug. 14, 2015). Therefore, because Plaintiff's DLCO test results do not satisfy the requirements of Medical Listings 3.00(F)(1) and 3.02(C)(1), Plaintiff's first argument fails.

18. Plaintiff next argues that remand is warranted because the ALJ ignored the Appeals Council order to further consider the "nature, severity, and effect of [her] fibromyalgia." (Docket No. 16 at 4).

19. On April 7, 2015, the Appeals Council granted Plaintiff's request for review under the substantial evidence and new and material evidence provisions of the SSA regulations. (R. at 70-72). The first hearing decision, dated November 22, 2013, was vacated and the matter was remanded for consideration of new evidence submitted to

the Appeals Council that postdated the decision, and for further consideration of Plaintiff's alleged or reported fibromyalgia pursuant to SSR 12-2p. Id.

20. Upon remand, the ALJ was ordered to: (1) obtain additional evidence concerning Plaintiff's impairments in order to complete the administrative record in accordance with regulatory standards; (2) give further consideration to Plaintiff's maximum RFC and nontreating source opinions, explain the weight given to opinion evidence, and provide specific references to evidence of record in support of all assessed limitations; and (3) clarify the effect of any assessed limitation on Plaintiff's occupational base. Id.

21. The ALJ did not provide a detailed discussion of fibromyalgia in the hearing decision. Although the law is clear that an "administrative law judge shall take any action that is ordered by the Appeals Council," we do not find this omission to be in error. 20 C.F.R. § 404.977(b).

22. As Defendant notes, the remand order was based on a prior decision, which found Plaintiff's fibromyalgia to be a severe impairment. (Docket No. 21 at 22-23). Remand was ordered, in part, because that prior decision "[did] not contain an adequate evaluation of the alleged or reported fibromyalgia in a manner consistent with Social Security Ruling 12-2p." (R. at 71).

23. The SSA will find that an individual has fibromyalgia if a licensed physician diagnoses fibromyalgia and provides evidence of: (1) a history of widespread pain; (2) repeated manifestations of at least six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence excluding other disorders as the cause of the symptoms or signs. See Soc. Sec. R. 12-2p.

24. Consultative internist Dr. Samuel Balderman examined Plaintiff on February 27, 2013. (R. at 315-18). Plaintiff complained of pulmonary disease, asthma, fibromyalgia, and migraine headaches, and the doctor's report notes "[c]oncerning

7

fibromyalgia, this was diagnosed two years ago." (R. at 315). However, after conducting a physical examination, Dr. Balderman did not diagnose Plaintiff with fibromyalgia. (R. at 317). Other than Plaintiff's medical history claims—not repeated in her sworn testimony (R. at 31-45)—there is no evidence that a physician ever made such a diagnosis.[5]

25. To establish that an individual has the medically determinable impairment of fibromyalgia, an ALJ must consider not only a physician's diagnosis of the impairment, but also supporting evidence for that diagnosis. Soc. Sec. Rul. 12-2p ("[An ALJ] cannot rely upon the physician's diagnosis alone.") However, without a diagnosis, further consideration of Plaintiff's alleged or reported fibromyalgia is not warranted. See id. Therefore, this Court finds that substantial evidence supports the ALJ's determination that Plaintiff's fibromyalgia is not a severe impairment, and that the ALJ did not err in foregoing a detailed discussion of the issue.

26. Plaintiff also contends that the ALJ failed to consider new evidence that postdated the first hearing decision. (Docket No. 16 at 4). This new evidence, obtained and submitted only after the first hearing decision was rendered, was a significant factor in the Appeals Council's decision to remand for a new hearing. (R. at 70).

27. The ALJ was directed to consider two documents in particular: (1) a November 25, 2013, magnetic resonance imaging ("MRI") of Plaintiff's lower cervical spine; and (2) a December 11, 2013 Progress Note from University of Buffalo, Neurosurgery. In light of this new evidence, the Appeals Council noted that "[a]dditional development is needed to fully assess the nature and severity of [Plaintiff's] physical impairments and any resulting work-related limitation." (R. at 70-71).

---

[5] On January 27, 2012, notes from Family Health Medical Services indicate that Plaintiff "states she has a [history] of fibromyalgia/arthritis," but a physical exam found Plaintiff had "[n]o tenderness of the spine" and she was not diagnosed with fibromyalgia. (R. at 269-71).

8

28. Plaintiff alleges the ALJ failed to examine this new evidence as ordered, and instead "only gave the conclusory statement that '[w]hile this new evidence has been reviewed and considered in full, it can only demonstrate the longitudinal history of [Plaintiff's] impairments and they have been incorporated into the [d]ecision only insofar as it relates to [Plaintiff's] abilities and limitations during the period of alleged disability.'" (Docket No. 16 at 4) (quoting R. at 14).

29. This argument, whether by design or careless reading, is a distortion of the ALJ's analysis. While the quoted text does appear in the decision, it clearly refers to the "significant amount of evidence occurring <u>before</u> [Plaintiff's] alleged onset date." (R. at 14) (emphasis added); <u>see</u> (R. at 254-98) (for Plaintiff's medical records and diagnostic testing from January 1, 2006—April 30, 2012).

30. With respect to new evidence that postdated the first decision, the ALJ found Plaintiff's severe impairments to include spinal and foraminal stenosis—as indicated by the November 2013 MRI, as well as radiculopathy and post anterior cervical discectomy—a finding consistent with both the December 2013 Progress Note and Plaintiff's subsequent neck surgery. (R. at 12, 326, 328, 337-38).

31. None of these severe impairments were mentioned in the first hearing decision, which found that Plaintiff's severe impairments consisted solely of COPD, fibromyalgia, and migraine headaches. (R. at 62-63).

32. In addition, the ALJ specifically incorporated a great deal of even more recent medical and opinion evidence obtained from December 2013 through August 2015. (R. at 14-15). Analysis of this subsequent evidence, including nearly two more years of treatment notes; multiple CT scans and another MIRI; and reports regarding Plaintiff's March 9, 2015 neck surgery, was necessary for the ALJ to find that Plaintiff has severe spinal and cervical impairments not identified in the prior decision. (R. at 12-15).

9

33. Because the ALJ followed the Appeals Council order to consider new evidence, Plaintiff's second argument is unavailing.

34. Finally, Plaintiff alleges that the ALJ was biased and pre-judged Plaintiff's claim prior to the hearing. (Docket No. 16 at 5). It is a fundamental tenet of due process that the right to an unbiased ALJ is "essential to a fair social security hearing." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995); see Schweiker v. McClure, 456 U.S. 188, 195, 102 S. Ct. 1665, 1670, 72 L. Ed. 2d 1, 8 (1982) ("[D]ue process demands impartiality on the part of those who function in judicial or quasi-judicial capacities").

35. "Allegations of bias are serious challenges and should not be trivially made." Jasen v. Comm'r of Soc. Sec., 217 U.S. Dist. LEXIS 138661, *26, 2017 WL 3722454 (W.D.N.Y. Aug. 29, 2017). Such a charge, which impugns the honesty and integrity of an administrative law judge in the exercise of his duty, "must be clear from the record and 'cannot be based on speculation or inference.'" Pabon v. Comm'r of Soc. Sec., 2015 U.S. Dist. LEXIS 103355, 2015 WL 4620047, *5 (S.D.N.Y.) (citing Card v. Astrue, 752 F. Supp. 2d 190, 191 (D. Conn. 2010) (internal citations omitted), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 121343, 2015 WL 5319265 (S.D.N.Y. 2015).

36. An ALJ is presumed to be unbiased absent "a showing of conflict of interest or some other specific reason for disqualification." Schweiker at 195. The burden of overcoming this presumption rests on the party making the claim of bias. Id. at 196.

37. In support of this charge of bias on the part of the ALJ, Plaintiff states:

> It is clear from the conduct of the hearing that [the ALJ] was predisposed to deny Plaintiff's claim when she appeared before him, as [the ALJ] did little or nothing to develop the record, failed to follow the Appeals Council Order, ignored the pertinent Listing, and found [Plaintiff] able to perform work which the previous ALJ had determined she could not do. All of this points to the ALJ's prehearing predilection to deny the claim and is in itself indicative of bias and warrants remand.

(Docket No. 16 at 5.)

38. Beyond this bare conclusory statement, which references Plaintiff's false claims about diagnostic test results, a distorted interpretation of the ALJ's decision, and an irrelevant comparison to the vacated hearing decision of November 22, 2013, Plaintiff offers absolutely no record-based support for this serious allegation. Id. at 3-5.

39. Plaintiff was represented by an attorney during the hearing, who was permitted to question Plaintiff and the VE for as much time as requested. (R. at 31-45). Nothing in the record suggests that the ALJ was predisposed to rule against Plaintiff or that the ALJ's conduct demonstrated "deep-seated favoritism or antagonism that would make a fair judgment impossible." Whitfield v. Astrue, 476 Fed. App'x 408, 409 (2d Cir. 2012) (quoting Reddy v. CFTC, 191 F.3d 109, 119-20 [2d Cir.1999]). Accordingly, this Court finds that Plaintiff has not met his burden of showing some specific reason for disqualification of the ALJ.

40. Having carefully reviewed the ALJ's decision and the entire record, this Court finds each of Plaintiff's arguments to be without merit. Therefore, Plaintiff's motion for judgment on the pleadings is denied.

41. However, this Court also finds the ALJ's analysis to be unclear with respect to the question of whether Plaintiff's impairments resulted in any period of disability that lasted at least 12 consecutive months during the relevant time period—September 1, 2012 through January 15, 2016. See 20 C.F.R. §§ 404.1509, 416.909. Of particular concern is this seemingly contradictory statement:

> The claimant underwent surgery for her neck impairment, which certainly suggest that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. However, she continues to be limited to performing no more that light exertional work, despite her surgery.

(R. at 15).

42. This Court fails to follow the ALJ's logic in concluding that the fact that Plaintiff's neck surgery was effective in alleviating her symptoms somehow offsets either the severity or validity of her symptoms prior to surgery. This matter has, unfortunately, remained unresolved for more than six years, and more than thirty (30) months have elapsed between Plaintiff's alleged onset date of September 1, 2012 and her March 9, 2015 neck surgery.

43. The ambiguous nature of the ALJ's analysis with respect to the genuineness of Plaintiff's symptoms and their duration, leaves open the possibility that Plaintiff might have been under a disability for some portion of the relevant period, which extends to the date of the decision, January 15, 2016. For this reason, the Commissioner's decision denying Plaintiff disability benefits is not supported by substantial evidence. Therefore, Defendant's motion for judgment on the pleadings is also denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 21) is DENIED.

FURTHER, that this matter is REMANDED to the Commissioner for expeditious handling of further proceedings and clarification consistent with this decision.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: January 17, 2019
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Court Judge